T. Edward Cundick, Esq. (#10451), tec@princeyeates.com
Adam S. Affleck, Esq. (#5434), asa@princeyeates.com
**PRINCE, YEATES & GELDZAHLER**
A Professional Corporation
15 West South Temple, Ste. 1700
Salt Lake City, UT 84101
Telephone: (801) 524-1000
Fax: (801) 524-1098

Attorneys for Apple Street One Twenty, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 18-28618 |
| **APPLE STREET ONE TWENTY, LLC** | (Chapter 11) |
| Debtor. | Honorable Joel T. Marker |

## CHAPTER 11 PLAN DATED FEBRUARY 14, 2019

# TABLE OF CONTENTS

**Page**

ARTICLE 1    DEFINITIONS ..................................................................................1

ARTICLE 2    TREATMENT OF ADMINISTRATIVE EXPENSES......................................4

ARTICLE 3    BIFURCATION OF ALLOWED CLAIMS SECURED BY LIENS.................5

ARTICLE 4    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .....5

ARTICLE 5    IMPAIRMENT OF CLAIMS ...............................................................10

ARTICLE 6    SPECIAL PROVISIONS FOR DISPUTED CLAIMS ....................................10

ARTICLE 7    MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN.....10

ARTICLE 8    LEASES AND EXECUTORY CONTRACTS ................................................13

ARTICLE 9    PAYMENTS ....................................................................................13

ARTICLE 10   BAR DATES, DEADLINES, OBJECTION TO CLAIMS ..............................14

ARTICLE 11   EFFECT OF CONFIRMATION ........................................................15

ARTICLE 12   GUARANTOR AND THIRD-PARTY LIABILITY.......................................16

ARTICLE 13   MODIFICATION OF PLAN ...........................................................16

ARTICLE 14   DEFAULT ....................................................................................17

ARTICLE 15   RETENTION OF JURISDICTION ..................................................18

ARTICLE 16   FINAL DECREE ...........................................................................19

ARTICLE 17   CLAIMS RETAINED UNDER THE PLAN ...................................................19

ARTICLE 18   SETTLEMENTS.............................................................................19

ARTICLE 19   MISCELLANEOUS.......................................................................19

# EXHIBITS

A.    SUMMARY OF CLAIMS AND INTERESTS

B.    ADDRESS LIST

Disclosure Statement Ex. A- 2/14/2019

# ARTICLE 1

## DEFINITIONS

1.1.    "Allowed Administrative Expense" means any cost or expense of the Estate that is allowed under § 503(b) of the Bankruptcy Code by a final and non-appealable order of the Court after notice and a hearing and shall also include any fees and charges assessed against the Estate under 28 U.S.C. § 1930.

1.2.    "Allowed Claim" means any debt represented by a proof of claim that is filed (including a claim that is deemed filed under § 1111(a) of the Bankruptcy Code) that is allowed under § 502(a) of the Bankruptcy Code and is not a Disputed Claim.

1.3.    "Allowed Interest" means any interest represented by a proof of claim that is filed (including an interest that is deemed filed under § 1111(a) of the Bankruptcy Code) that is allowed under § 502(a) of the Bankruptcy Code and is not a Disputed Interest, or alternatively the presumed respective 50% membership interests held by Steve and Sherry Walker.

1.4.    "Allowed Secured Claim" means an Allowed Claim secured by a lien on property of the Estate.

1.5.    "Allowed Unsecured Claim" means an Allowed Claim that is not secured by a lien on property of the Estate.

1.6.    "Bankruptcy Code" means Title 11 of the United States Code.

1.7.    "Claim" means any claim as defined by § 101(5) of the Bankruptcy Code.

1.8.    "CMN Funding Financing" means that certain post-petition financing being arranged by the Debtor-in-Possession to facilitate the take-out of senior secured debt and construction of all or part of the Debtor's Project, whether that financing is ultimately provided through CMN Funding, any syndicate which they create, or some other lender.

1.9.    "Confirmation" means the entry of the order of the Court confirming this Plan.

1.10.    "Confirmation Hearing" means the first date set for hearing on the confirmation of the Plan, if referring to a deadline by which certain events will occur; otherwise, it also incorporates all subsequent continuances of the Confirmation Hearing.

1.11.    "Court" means the United States Bankruptcy Court for the District of Utah.

1.12.    "Debtor" means Apple Street One Twenty, LLC.

1.13.    "Debtor's Project" means the currently commenced and to-be-completed construction of a clubhouse, 120 apartment units (in four adjacent structures), supporting parking structures, and other amenities on land located at 451 West Apple Street, Grantsville, UT 84029.

1.14.    "Disputed Claim" means any claim or interest which is identified in Exhibit A as disputed or any claim for which an objection has been filed by the Debtor, the Reorganized Debtor, or any other party in interest.

1.15.    "Effective Date" means 21 days after Confirmation.

1.16.  "Estate" means the estate created and described under § 541 of the Bankruptcy Code.

1.17.  "Estate Cash" means all cash in the possession of the Debtor that is property of the Estate whether it is unencumbered or represents the "cash collateral" of a holder of an Allowed Secured Claim.

1.18.  "Jett" means Jett Funding, LLC.

1.19.  "Ordinary Course Administrative Expense" means any Administrative Expense that has been incurred in the ordinary course of the Debtor's business and that would be otherwise payable without Court approval but is not due by its terms until at, or after, Confirmation including, without limitation, post-petition employee wages and benefits, post-petition accounts payable, etc.

1.20.  The "Property" means approximately 9.78 acres of land located at 451 West Apple Street, Grantsville, Utah, tax ids. 01-066-0-0006; 01-112-0-0012; and 01-112-0-0011.

1.21.  "Pending Administrative Expense" means any cost or expense of the Estate that may be allowable under § 503(b) of the Bankruptcy Code and is not barred but has not been allowed by final order of the Court.

1.22.  "Petition Date" means November 16, 2018.

1.23.  "Plan" means this plan of reorganization.

1.24.   "Plan Interest Rate" shall mean 6.00%, or such other amount as the Court may determine at the Confirmation Hearing.

1.25.   "Reorganized Debtor" means the Debtor after Confirmation.

1.26.   "SABA" means SABA55, LLC.

1.27.   "Schedules" means the schedules and statement of financial affairs filed by the Debtor on November 30, 2018 along with any subsequent amendments filed thereto prior to the Confirmation Hearing.

## ARTICLE 2

## TREATMENT OF ADMINISTRATIVE EXPENSES

2.1.   *Ordinary Course Administrative Expenses.* After the Effective Date and unless otherwise agreed, Ordinary Course Administrative Expenses shall be paid when they become due in the ordinary course of the Debtor's (and the Reorganized Debtor's) business.

2.2   *Allowed Administrative Expenses.* Unless otherwise agreed, on the Effective Date, the Reorganized Debtor shall pay all Allowed Administrative Expenses which remain unpaid at Confirmation.

2.3   *Pending Administrative Expenses.* Unless otherwise agreed, on the day that a Pending Administrative Expense becomes an Allowed Administrative Expense, the Reorganized Debtor shall pay such Allowed Administrative Expense.

Disclosure Statement Ex. A- 2/14/2019

2.4    *U.S. Trustee Fees*. Unless otherwise agreed, on the Effective Date, the Reorganized Debtor shall pay all fees then owing to the U.S. Trustee. Any U.S. Trustee's Fees that become due between Effective Date and the entry of the final decree shall be paid by the Reorganized Debtor in accordance with 28 U.S.C. § 1930(a)(6).

## ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    *Class S1* shall consist of the Allowed Secured Claim of the Tooele County Assessor to the extent secured by its pre-petition lien on the Property, in the amount of $7,454.04. The Reorganized Debtor shall make payments commencing on the date that is 30 days after the Effective Date, and continuing on the same date of each successive month, in the amount of $144.11, continuing until 60 monthly payments have been made (such payments being sufficient to pay the Allowed Secured Claim in full with interest at the Plan Interest Rate). The Reorganized Debtor may at its option prepay any remaining balance on the Class S1 claim, together with all accrued interest through the date of payment, at any time. On the Effective Date, any default on the obligations comprising the Allowed Secured Claim shall be deemed cured by the Reorganized Debtor.

3.2    *Class S2* shall consist of the Disputed Claim of SABA to the extent and in the amount it is ultimately determined to be an Allowed Secured Claim through the claims allowance process. SABA's claim is likely oversecured by its first-position, pre-petition, Deed of Trust on the Property. The amount of SABA's claim is in dispute: SABA has

informally asserted that it is owed more than $3,700,000.00, including default interest, attorneys' fees and costs, collection charges, and additional amounts. The Debtor believes that the claim balance is much less than informally stated by SABA, and closer to $2,700,000.00.

The Reorganized Debtor shall consummate the CMN Funding Financing or an alternative financing arrangement from a lender not currently involved in the bankruptcy case, in an amount not less than $14,950,000.00. Such loan shall be secured by a first-position trust deed on the Property. The loan proceeds shall be used in part to pay $2,700,000.00 to SABA on the Effective Date, in full satisfaction of SABA's claim, and any claim SABA may have against any entity or individual involved in this bankruptcy case, whether as Debtor, creditor, member (including Steve and Sherry Walker), officer, employee, attorney, or otherwise.

3.3    *Class U1* shall consist of all Disputedly Unsecured Claims of creditors who asserted a prepetition perfected security interest, but depending on the allowed amount of SABA's claim, may find their entire claim unsecured pursuant to 11 U.S.C. § 506. In the event of plan failure, it is likely the Class U1 creditors would be foreclosed out by SABA's senior secured interest.

The Reorganized Debtor will repay all allowed Class U1 claims by paying a 25% initial payment on the capped amount of such claims within 30 days of the Effective Date, and then by either: (1) paying the balance of the capped claim amount in full within 4 years

after the Effective Date, with interest at the Plan Interest Rate; or (2) converting the claim into Class B membership interests in the Reorganized Debtor, in the respective amount such that all holders of Class B membership interests share pro rata in the entirety of Class B membership interests in the Reorganized Debtor according to their respective shares of the unpaid Class U1 and U2 allowed claims. The Debtor anticipates that the Class B membership interests will be worth approximately $1,100,000 upon stabilization, which amount far exceeds the total anticipated outstanding balances of allowed Class U1 and U2 claims. The capped amount of the Class U1 Claims is set forth in Exhibit A, incorporated herein by reference.

3.4     *Class U2* shall consist of all non-insider general Allowed Unsecured Claims in the amounts set forth in Exhibit A.  The Reorganized Debtor will repay all allowed Class U2 claims by paying a 25% initial payment on the capped amount of such claims within 30 days of the Effective Date, and then by either: (1) paying the balance of the capped claim amount in full within 4 years after the Effective Date, with interest at the Plan Interest Rate; or (2) converting the claim into Class B membership interests in the Reorganized Debtor, in the respective amount such that all holders of Class B membership interests share pro rata in the entirety of Class B membership interests in the Reorganized Debtor according to their respective shares of the unpaid Class U1 and U2 Allowed Claims. The Debtor anticipates that the Class B membership interests will be worth approximately $1,100,000 upon stabilization, which amount far exceeds the total anticipated outstanding

balances of allowed Class U1 and U2 claims. The capped amount of the Class U2 Claims

is set forth in Exhibit A, incorporated herein by reference.

3.5    *Class U3* shall consist of a convenience class of claims. Any creditor holding

an Allowed Secured Claim in Class U1 or U2 may, by delivering a written request within

30 days of the Effective Date, request entry into Class U3. The Reorganized Debtor may,

in its sole discretion, solicit such requests after the Confirmation Hearing (though such

solicitation shall not constitute acceptance required below). Upon receiving such written

request, and within a reasonable time thereof, the Reorganized Debtor shall, in its sole

discretion, decide whether to accept or reject such request. If accepted, upon acceptance,

the Reorganized Debtor will pay 50% of the allowed amount of the claim in full satisfaction

of both the claim and the underlying debt. If rejected, the claimant will retain its Class U1

or U2 claim.

3.6    *Class U4* shall consist of all Allowed Unsecured Claims held by insiders,

including only Steve and Sherry Walker. The holders of Class U4 claims shall be granted

20% of the Class A membership interests in the Reorganized Debtor, in full satisfaction of

their prepetition claims, with a provision that the Class A membership interests as a whole

shall always retain at least 75% of the total outstanding membership interests in the

Reorganized Debtor. All members of this class shall be required to personally guarantee

the CMN Funding Financing and any future financing sought by the Reorganized Debtor

within 4 years of the Effective Date. Failure to do so, and failure to cure such deficiency

within a reasonable period upon written notice, shall void such class member's Class A

membership interests in the Reorganized Debtor. Only in that event, the total ownership

share of the Class B membership interests in the Reorganized Debtor may exceed the 25%

limitation set forth above.

3.7   *Class T1* shall contain only the Disputed Claim of the IRS. Currently, the

IRS has filed a proof of claim in the amount of $18,637.48. Informally, the Debtor

understands that the IRS will be amending to $0 or withdrawing that claim prior to

confirmation. Nevertheless, if the claim becomes an Allowed Secured Claim, it shall be

paid in regular quarterly payments with interest at the Plan Interest Rate, in an amount

sufficient to fully amortize the claim over the five years following the Effective Date.

3.8   *Class D1* shall contain only the Disputed Claim of Maghsood Abbaszadeh,

who has informally asserted that he is personally owed a debt in excess of $300,000.00, for

which Steve Walker is allegedly also personally liable. Steve Walker will pay $150,000.00

personally within 90 days of the Effective Date in full satisfaction of the Class D1 claim.

No payment from the Reorganized Debtor shall be made on the Class D1 Claim.

3.9   *Class E1* shall contain only the prepetition membership interests in the

Debtor. Holders of Class E1 claims may convert their claims to 80% of the Class A

membership interests in the Reorganized Debtor, in full satisfaction of their prepetition

interests. All members of this class shall be required to personally guarantee the CMN

Funding Financing and any future financing sought by the Reorganized Debtor within 4

years of the Effective Date, on the same terms as those required of the holders of Class U4 claims.

## ARTICLE 4

## IMPAIRMENT OF CLAIMS

All classes are impaired under the Plan, and hence entitled to vote on the Plan.

## ARTICLE 5

## SPECIAL PROVISIONS FOR DISPUTED CLAIMS

If, when a distribution is required under the Plan, a Disputed Claim has not been resolved, then the Reorganized Debtor shall set aside and hold that amount that would have been distributed had Disputed Claim been an Allowed Claim until the Disputed Claim is disallowed or becomes an Allowed Claim. Upon becoming an Allowed Claim, the Reorganized Debtor shall pay the held-back amount to the claimholder. If disallowed, the distribution amount will be used by the Reorganized Debtor for later distribution to holders of Allowed Claims as provided for under the Plan.

## ARTICLE 6

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

6.1    *Continuation of Business.* The Reorganized Debtor shall continue its pre-petition/pre-confirmation business operations including developing the Debtor's Project.

6.2    *Borrowing Upon Confirmation and Payments Due on the Effective Date.* The Reorganized Debtor shall use borrowed funds to pay all amounts required under the Plan

to be paid as of the Effective Date. The Debtor hereby seeks and subject to court approval will obtain a secured loan, pursuant to 11 U.S.C. § 364(d)(1), that is senior to all other debt secured by the Property. The Debtor represents that it has sought credit on an unsecured and priority basis, and has found no lenders willing to lend on such terms. The Debtor further represents that because all claims will be paid in full with the loan proceeds or other post-confirmation revenues or borrowing, allowing the lender to prime existing liens in the brief window between Confirmation and the Effective Date is appropriate under the terms of the Bankruptcy Code.

6.3     *Adequate Protection Payments.* In the event that the Reorganized Debtor is required to make any adequate protection payments to the holders of Allowed Secured Claims that come due between the Petition Date and the Effective Date, such adequate protection payments shall be credited, other than the portion necessary to compensate the recipient for post-petition, pre-confirmation interest at the non-default note rate, to reduce the amount of Allowed Secured Claims on the Effective Date.

6.4     *Post-Confirmation Plan Obligations and Operating Expenses.* The Reorganized Debtor shall pay post-confirmation obligations under the Plan and ongoing debts incurred in the ordinary course of the Reorganized Debtor's business from the CMN Funding Financing, post-confirmation earnings, and, if necessary, subsequent loans, capital contributions, or the sale of additional membership interests.

6.5     *Prohibition on Distributions of Profits*. The Reorganized Debtor shall be prohibited from making any distribution of profits on account of membership interests until all claims (other than those converted into Class B membership interests) have been paid in full. In the event distributions are made thereafter, they shall be made according the pro rata membership interests of the combined Class A and Class B membership interests (i.e. if a distribution of $10,000 is made, it shall go $7,500 collectively to the holders of Class A membership interests, and $2,500 collectively to the holders of Class B membership interests).

6.6     *Prohibition on Non-voting Equity*. The Reorganized Debtor shall be prohibited from issuing non-voting membership interests. The membership interests of Class A members and Class B members shall each maintain voting rights corresponding to their respective per centage interest in the Reorganized Debtor. If necessary, the charter of the Reorganized Debtor shall be amended to reflect this Plan provision.

6.7     *Post-Confirmation Professional Fees and Costs.* The Reorganized Debtor shall pay fees and expenses incurred post-Confirmation by its professionals (including, with limitation, those employed during the pendency of this case) in the ordinary course of the Reorganized Debtor's business. The Reorganized Debtor and its professionals shall not be required to obtain authorization for such payments under applicable provisions of the Bankruptcy Code governing employment and payment of professionals in a case.

6.8    *Post-Effective Date U.S. Trustee Fees*. After the Effective Date, the Reorganized Debtor shall timely pay all fees required pursuant to 28 U.S.C. § 1930, until a final decree is entered, or the case is closed or dismissed.

## ARTICLE 7

## LEASES AND EXECUTORY CONTRACTS

7.1    *Leases and Executory Contracts to be Assumed*. Upon the Effective Date, all leases and executory contracts to which the Debtor is party shall be deemed rejected (unless previously deemed rejected pursuant to 11 U.S.C. § 365). A party to a lease or executory contract that is rejected under this provision, and claims damages arising by such rejection, must file a proof of Claim arising from such rejection within 21 days after entry of the Confirmation Order. Failure to file a proof of Claim by this deadline will result in disallowance of the Claim.

## ARTICLE 8

## PAYMENTS

8.1    *Manner of Payment*. Unless other mutually acceptable arrangements are made between the Reorganized Debtor and the holder of an Allowed Administrative Expense or Allowed Claim, the Reorganized Debtor shall make payments required hereunder by check which will be mailed (first-class, postage prepaid) to the holder of the Allowed Claim or Allowed Administrative Expense. A payment shall be deemed made when mailed.

8.2    *Right to Rely on Information*. The Reorganized Debtor shall be entitled to rely on the addresses contained in Exhibit B in making payments required hereunder. Every holder of an Allowed Unsecured Claim has the duty to ensure that its address is listed correctly. The Reorganized Debtor may, but shall have no duty to, search for, obtain, or make corrections to contact and mailing information in the absence of correction by the holder of an Allowed Claim.

8.3    *Forfeiture of Payments*. Holders of Allowed Claims or Allowed Administrative Expenses shall be deemed to have forfeited their right to a payment hereunder if (a) a payment check is returned as undeliverable, as having an incorrect address, or the like, and such party does not contact the Reorganized Debtor within 90 days of the check being originally mailed, or (b) a payment check is not paid by the payor bank within 90 days after it is mailed.

## ARTICLE 9

## BAR DATES, DEADLINES, OBJECTION TO CLAIMS

9.1    *Administrative Expense Bar Date*. Unless an earlier date is ordered by the Court, the bar date for the filing of applications for allowance of any pre-Confirmation administrative expense (except for those of the Debtor's professionals and taxing entities) under § 503(b) of the Bankruptcy Code shall be the first date set for the Confirmation Hearing. The Internal Revenue Service and the Utah State Tax Commission shall have 45 days after the relevant return is filed with the insolvency departments of those taxing

authorities to file an application for allowance of any pre-Confirmation administrative

expenses. For the Internal Revenue Service, these returns may include quarterly Form 941

returns, Form 940 and a Form 1041.

9.2   *Claims Bar Date*. The bar date for filing proof of claims is March 19, 2019.

Except as otherwise provided herein, any proof of Claim filed after that date shall be

deemed disallowed unless the holder of such Claim has obtained an order of the Court

allowing the late-filing of the Claim that is entered before the Confirmation Hearing.

9.3   *Amendment of Claims*. Except as otherwise provided for herein, no proof of

Claim may be amended to increase the amount of any Claim after the Confirmation

Hearing.

9.4   *Objections to Claims*. Except as otherwise provided for herein, objections to

Claims must be filed no later than 60 days after the Effective Date. Any party in interest

with a financial stake in the outcome of an objection to a Claim may object to such Claim

or join in the prosecution of any pending objection to such Claim.

## ARTICLE 10

## EFFECT OF CONFIRMATION

10.1   *Binding Effect.* Upon the Effective Date, the provisions of the Plan shall bind

the Debtor, the Reorganized Debtor, creditors, and all parties in interest regardless of

whether or not such persons or entities have impaired claims under the Plan or whether or

not such persons or entities have accepted the Plan.

10.2    *Vesting of Property*. Property of the Estate shall vest in the Reorganized Debtor upon the Effective Date free and clear of all Claims and interests except as provided for or retained under the Plan.

10.3    *Discharge.* Upon the Effective Date, the Debtor shall receive a discharge of any debt that arose before Confirmation, and all creditors and parties in interest shall be permanently enjoined from commencing or pursuing any action against the Reorganized Debtor other than to enforce the obligations created or preserved under this Plan.

## ARTICLE 11

## GUARANTOR AND THIRD-PARTY LIABILITY

As it is the intent of the Debtor and its principals to propose a plan that pays all outstanding claims in full or at amounts agreed to by the parties, payment according to the terms contained herein shall fully satisfy both the Debtor's obligation and any Guarantor's obligation for the debts treated by the plan.

## ARTICLE 12

## MODIFICATION OF PLAN

12.1    *Modification Prior to Confirmation*. The Debtor may modify the Plan at any time before Confirmation provided that the Plan, as modified, meets the requirements of the Bankruptcy Code. If the Debtor files a modification of the Plan with the Court, the Plan as modified will become the Plan.

12.2  *Modification After Confirmation*. The Debtor may modify the Plan at any time after Confirmation and before substantial consummation provided that the Plan, as modified, meets the requirements of the Bankruptcy Code. The Plan, as modified, after Confirmation will become the Plan only if circumstances warrant such modification and the Court, after notice and hearing, confirms the Plan as modified. If the Court makes such a determination and approves such modification, it shall be deemed accepted by all holders of claims that have previously accepted the Plan.

## ARTICLE 13

## DEFAULT

13.1  *Rights of Secured Creditors.* A default shall occur with respect to payment of an Allowed Secured Claim if a payment is not made and/or cured according to the terms of the Reorganized Debtor's Obligations as modified under the Plan. Upon default, the holder shall be entitled to enforce its modified debt and lien rights according to its loan documents and under any applicable law.

13.2  *Rights of Unsecured Creditors*. A default shall occur with respect to payment of an Allowed Unsecured Claim or Allowed Administrative Expense if the Reorganized Debtor fails to make any payment or distribution required under the Plan. In the event of such a default, the aggrieved party shall be required to provide written notice of such default to the Reorganized Debtor. The Reorganized Debtor shall have ten (10) days after its actual receipt of such written notice to cure the default. Absent cure, the holder of an

Allowed Claim or Allowed Administrative Expense shall be entitled to accelerate all amounts due and enforce its debt as modified under the Plan, less any amounts that have been paid under the Plan.

## ARTICLE 14

## RETENTION OF JURISDICTION

The Court shall retain jurisdiction after Confirmation for the purposes of: (a) fixing an allowance of any Administrative Expense; (b) hearing and determining any objection to a Claim; (c) hearing and determining all causes of action, controversies, disputes, or conflicts that were pending before Confirmation; (d) correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or order of confirmation as may be necessary to carry out the purpose and intent of the Plan; (e) issuing any order necessary to implement the Plan, including without limitation, such declaratory and injunctive orders as are appropriate to protect the Estate or Reorganized Debtor from actions of creditors, or other parties in interest; (f) hearing and determining any dispute relating to the terms or implementation of the Plan or to the rights or obligations of any parties in interest with respect thereto; (g) confirming a Plan after modification pursuant to § 1127(b) of the Bankruptcy Code; and (h) entering orders concluding and terminating this bankruptcy case.

## ARTICLE 15

## FINAL DECREE

The Reorganized Debtor shall seek a Final Decree under § 350 of the Bankruptcy Code (and Bankruptcy Rule 3022) as soon as practicable after the estate is fully administered. The Reorganized Debtor need not make all payments required under the Plan in order to establish substantial consummation.

## ARTICLE 16

## CLAIMS RETAINED UNDER THE PLAN

The following claims belonging to the Debtor or the Estate shall be retained by the Reorganized Debtor: (1) any and all claims that existed pre-petition relating to any account receivable; (2) any and all compulsory or permissive counterclaims relating to any Disputed Claim; and (3) any claims raised in any state court proceeding, adversary proceeding, or contested matter that is pending at the time of Confirmation or was pending as of the Petition Date. Any claim not retained shall be deemed abandoned upon Confirmation. The Reorganized Debtor reserves the right to transfer these retained claims to its members.

## ARTICLE 17

## MISCELLANEOUS

17.1    *Calculation of Time Periods.* The calculation of time periods herein shall be governed by Federal Rule of Bankruptcy Procedure 9006.

17.2   *Notices to the Reorganized Debtor*. Notices to the Reorganized Debtor shall

be deemed proper only if delivered or mailed to:

>       Steve Walker, General Manager
>       2452 Scenic Dr.
>       Salt Lake City, UT 84109

17.3   *Reports.* The Reorganized Debtor shall file a post-confirmation summary

report in conformity with Local Rule 2081-1(c) within 90 days of the Effective Date.

Dated this 14th day of February, 2019.

APPLE STREET ONE TWENTY, LLC

By: /s/ Steve Walker
    Managing Member
    Apple Street One Twenty, LLC


PRINCE, YEATES & GELDZAHLER

/s/ T. Edward Cundick
Attorneys for Apple Street One Twenty, LLC


G:\TEC\Apple Street One Twenty\Plan dated 2-14-19.docx

| | Scheduled | Disputed? | Proof of Claim | Capped Amount | Effective Date Payment | Final Payment due in 4 years, interest included |
|---|---|---|---|---|---|---|
| **Class S1** | | | | | | |
| Tooele County Assessor | $7,454.04 | ☐ | | | | |
| **Class S2** | | | | | | |
| SABA55 LLC | $2,700,000.00 | ☒ | | $2,700,000.00 | $2,700,000.00 | $0.00 |
| **Class U1-- Disputedly Unsecured Claims** | | | | | | |
| CV Carlson Heating & AC | $26,000.00 | ☐ | | $26,000.00 | $6,500.00 | $24,180.00 |
| Jeff Financing Co., LLC | $200,000.00 | ☒ | | $200,000.00 | $50,000.00 | $186,000.00 |
| Mulligan Funding LLC | $0.00 | ☒ | | $0.00 | $0.00 | $0.00 |
| Therese Owen | $55,000.00 | ☐ | | $55,000.00 | $13,750.00 | $51,150.00 |
| **Class U2-- Non-Insider Gen. Unsecured Claims** | | | | | | |
| American Eagle Concrete | $28,141.77 | ☐ | | $28,141.77 | $7,035.44 | $26,171.85 |
| Flatline Concrete | $13,225.00 | | | $13,225.00 | $3,306.25 | $12,299.25 |
| Preferred Paving | $125,550.00 | | | $125,550.00 | $31,387.50 | $116,761.50 |
| **Class U3-- Convenience Class** | | | | | | |
| **Class U4-- Insider Unsecured Class** | | | | | | |
| Steven K Walker | $94,400.00 | ☐ | | $94,400.00 | $0.00 | $0.00 |
| **Class D1-- Disputed Claim** | | | | | | |
| Maghsood Abbaszadeh | $0.00 | ☒ | Paid outside plan | | | |
| **Class E1-- Equity** | | | | | | |
| Steve Walker | 50% | ☐ | | $0.00 | $0.00 | $0.00 |
| Sherry Walker | 50% | ☐ | | $0.00 | $0.00 | $0.00 |
| **Class T1-- Tax Claims** | | | | | | |
| IRS | 0% | ☒ | $18,637.48 | $0.00 | $0.00 | $0.00 |
| **Administrative Claims** | | | | | | |
| Tooele County Assessor | | ☐ | | $27,000.00 | $27,000.00 | |
| UST Fees | | ☐ | | $30,000.00 | $30,000.00 | |
| PYG Fees | | ☐ | | $10,000.00 | $10,000.00 | |

Funding Proposal-Use of funds

| | |
|---|---|
| Retire Debt | $2,878,979.19 |
| Additional Soft/Design Costs | $300,000.00 |
| Hard costs w/ contingency | $10,096,095.81 |
| Interest Reserve | $1,400,000.00 |
| Closing costs | $274,925.00 |
| | $14,950,000.00 |

Total funds required on Effective Date          $2,878,979.19

Total funds required on 4th anniversary of Effective Date:          $416,562.60

Plan Exhibit A-2/14/19

# Exhibit B

## to Chapter 11 Plan

### Dated February 14, 2019

**Tooele County Tax Assessor**
**47 South Main**
**Tooele, UT  84074**


**SABA55 LLC**
**1916 South 1600 East**
**Salt Lake City, UT  84105**


**C V Carlson Heating & AC**
**164 Berger Lane**
**Salt Lake City, UT  84107**


**Jett Financing Co., LLC**
**813 North 900 West**
**Orem, UT 84057**


**Mulligan Funding LLC**
**4619 Viewridge Avenue**
**Suite C**
**San Diego, CA  92123**


**Therese Owen**
**2266 East Blossom Circle**
**Sandy, UT 84093**


**American Eagle Concrete**
**7811 West 2100 South**
**Magna, UT 84044**


**Flatline Concrete**
**6661 South Cyclamen Way**
**West Jordan, UT 84081**


**Preferred Paving**
**3280 West Directors Row**
**Salt Lake City, UT 84104**


**Steven K. and Sherry Walker**
**2452 Scenic Drive**
**Salt Lake City, UT 84109**